Our eighth case for today is United States v. Thomas, 21-1239 and 21-1240, which we are taking on the briefs, so there will be no oral argument in that case, which brings us to our final case for today's docket, United States v. Rucker, 21-2001, and for that case we have Mr. Richards and Mr. Takanini, and so Mr. Richards, you may proceed. Stephen Richards Thank you, Your Honor. My name is Stephen Richards and I represent the appellant in this case, Damon Rucker. As Your Honors are aware, this is an appeal from the denial of Damon Rucker's motion for a compassionate release. He is currently serving 240 months in BOP consecutive to another sentence he received for a drug offense. Your Honors, I think this case raises a question which this court has not really addressed in the case of the COVID compassionate release cases, which is, to what extent must a district court perform a reasoned analysis of a compassionate release claim? In this particular case, Mr. Rucker presented considerable evidence or at least a proffer through his paperwork as to, number one, a deadly outbreak at Big Springs FCI, which was uncontrolled at certain points where he was housed, bad, unsanitary conditions at Big Springs FCI, which he predicted would lead to an outbreak and did lead to an outbreak, leading to him contracting COVID, his medical conditions, which included many comorbidity factors for COVID, including obesity, high blood pressure, possible sickle cell anemia. That was not verified, but only because the prison refused to do so. And he presented all this evidence. The district court's response was basically threefold. One, the district court said it was relying in some specified way on the previous sentencing guideline, which many courts, including this one, have recognized is outdated because it preceded the First Step Act. But the court acknowledged that that was not binding on him. He was really quite clear about that. He was, but— And our court has said you can consult it for whatever guidance may be available. He says the formerly controlling statement may continue to inform the district court's discretion. Your Honor, and I think my response to that would be if it did inform his discretion, there's absolutely no indication in this very cursory opinion as to how it did so. He doesn't refer to it. He doesn't quote it. He doesn't compare any of its guidelines to the situation before him. So if that's the basis for his decision, it's not a good basis. Why isn't the basis for his decision pretty apparent from what he writes? First of all, even though he did have, unfortunately, a bout with the virus, it was mild and he's over it. And so the medical need isn't beyond the—medical need isn't really there, he says. And then he also says that the record still shows that he has a risk of recidivism and a danger to the safety of others, 3553A. And so the judge says you're not a candidate for compassionate release. Those are reasons we see all the time. Your Honor, let me take those in turn, starting with contracting COVID. He says asymptomatic based upon medical records. Mr. Rucker says, and he filed a sworn declaration to that effect, that he minimized his condition to BOP because he didn't want to undergo the measures that would be taken if he said that he was symptomatic. But that, in fact, he was symptomatic, and he describes the symptoms, and the symptoms are consistent with COVID. But, you know, we would be going down a difficult line, Mr. Richards, if we start saying that district courts can't rely on the official medical records. Those are kept by, you know, professionals within the prison, and I understand maybe he didn't want to be in isolation or something, you know, but the medical record, you're agreeing, doesn't reflect that he was symptomatic. And I'm worried that you're asking us to open up every medical record. No, Your Honor, I think I'm asking you to open up the medical records in cases where there is a significant factual contest, which there would be in very limited instances. I mean, in most cases, people are honest with their physicians and they're, because they rely on physicians' advice. That's one reason why such statements are admissible as an exception to the hearsay rule. I wonder, Mr. Richards, whether the better response is that this just comes dangerously close to what this court had a problem with in Newton. A judge somehow including as a basis for his decision that someone already had COVID and is recovered, when the judge doesn't have, you know, is not a doctor, is not the CDC, we don't know the impact of that. Your Honor makes, indeed makes the better point, which the cases, district court cases have also made. The district court cases have granted compassionate release in cases of people who are asymptomatic. One of the things they've noted is, number one, there is such a thing as long haul symptoms or long haul effects of COVID, which are not totally known at this point, but are very significant and very dangerous. That's number one. So the fact that somebody is asymptomatic is not indicative by itself. And the other larger point I would make is that COVID, I think, changes the whole situation with respect to compassionate release and health conditions. Because before COVID, the major health conditions that inmates dealt with were, I'm not sure, the opposite of infectious. They were conditions like heart disease or cancer or things like that, that cannot spread to one inmate or another. I think what the district courts have been concerned about and have reacted to in some of the compassionate release decisions is the fact that BOP as a whole, unfortunately, just like society as a whole, responded very, very poorly to the COVID epidemic, particularly in its early stages. The government has a right to punish Mr. Ruffer, but it doesn't have a right to give him a death sentence. And he was certainly in danger of that with the conditions at Big Spring FCI, with the fact that he contracted COVID, despite warning about that in written documents and filings well before the outbreak was at its peak. So and in addition, Your Honor, the court failed to consider the other things that the which recited in my brief. For example, he failed to look at his underlying conditions. But let me move on to Judge Wood's point, because my time is pressing. With respect to his recidivism, again, this is a very cursory opinion, just says he committed a bad crime. And therefore, there's a danger of recurrence. He presented substantial evidence of rehabilitation. And he presented evidence that the initial finding that he was incorrigible was based upon a legal mistake as to his violation of his violations of probation. So for those reasons, this is not a well reasoned opinion. This is an abuse of discretion. And at a minimum, there should be a remand for a re-evaluation of the case. All right. Thank you. You may save the rest of your time for rebuttal then. And we will turn to Mr. Paganini. Excuse me. May it please the Court. My name is Scott Paganini, and I represent the United States. Your Honor, the District Court did not abuse its discretion in denying defendants amended motion for compassionate release. The District Court reasonably relied, reasonably found that the facts did not support defendant's claim that his medical conditions combined with the COVID conditions and in-custody procedures and medical care warrant a reduction due to extraordinary and compelling reasons. The District Court did not err in finding that the defendant recovered from COVID without serious symptoms. And as Your Honor noted, the District Court is not a doctor, but the District Court relied on doctors and medical professionals at the Bureau who spoke to the defendant, and the defendant indicated that he was asymptomatic and he denied any respiratory symptoms. It was only in his reply, after the government noted that the medical record said this, that the defendant submitted a contrary affidavit that the Court considered, but found that the medical records and the defendant's treatment at the Bureau of Prisons outweighed his contradictory affidavit. Moreover... Counsel, how is the District Court statement here different from the District Court statement in Newtown about the COVID recovery? Well, it's... In this case, Your Honor, I think it's different because he's considering the medical records in this case. I don't think the District Court is putting, you know, saying that just because he's asymptomatic doesn't mean that he's, you know, that there's... Compassionate release couldn't be granted. That's not what the District Court is saying. I think the District Court is saying is the medical records here find that he did get COVID, he was asymptomatic, he went through the procedure at the prison, and after the certain days, he was released from isolation. And so they follow those protocols. And so I think in this case, it would be different. What's the probative value that the District Court is assigning to that statement? The probative value... The probative value to... I think it's assigning the weight is to the medical records. That it's finding that the defendant has been treated and he has been dealing with medical professionals and that they have found, based on his statements to them, which they can't... I mean, if the defendant is going to indicate that he's not suffering from any respiratory illnesses or any issues, then the District Court has to rely on what the records indicate, the medical records, based on the defendant's statement to those medical professionals. I'm saying, what's the conclusion that the District Court is then drawing from that piece of information? Oh, that it's not an extraordinary and compelling at this point because he has recovered from COVID. And so his concerns at this point, that his medical conditions would somehow warrant an increased risk of him being exposed to COVID and causing serious medical issues. Okay. So how is that conclusion different from the conclusion we saw the District Court making in Newton? Your Honor, I think that the difference is then, I would say, is because the court ultimately still found that, based on the medical records, that it was not extraordinary and compelling, and that would be my... And then, moreover, Your Honor, is even if the District Court abused its discretion, there is nothing in the record that contends that the defendant is unable to benefit from vaccines as this court has indicated, post the District Court's decision here, that if the vaccines are available and that the defendant is able to receive those vaccines or the benefit from them, then that in itself is a reason that it would not be an extraordinary and compelling, that COVID would not be an extraordinary and compelling reason to warrant release. So I wanted to pursue that a little bit. One can read Broadfield as the sweeping statement that you've just made, but there is a safety valve, if you will, in Broadfield, which was a decision handed down before the Omicron variant of this virus became the predominant one in the United States. And the assumption that vaccines were a guarantee that you weren't going to get the disease turns out to be quite wrong. There are huge numbers of breakthrough illnesses of this particular variant. So there may need to be a little more nuance to this vaccine argument than the one that we're seeing now. So that may be for us to think about. The other thing, though, I wanted to just explore, am I understanding that you're saying that the problem in the Newton case was that the District Court was the one making a medical assumption, whereas here the District Court is just deferring to the medical assessment of the prison medical personnel? Yes, Your Honor. Okay. And what about the 3553A? Now, I guess he did, the Court mentions the violent attack on the cooperating witness, and it was certainly quite a violent attack. Would that be enough on its own, in your view, to sustain this result? Yes, Your Honor, because the District Court, in considering the 3553A factors, looked at the nature of the offense, the risk of recidivism, and the danger and safety to other persons. And under this Court's case law, it's enough to state one reason to adequately support that judgment. And in this case, the District Court did more than one in terms of the risk of recidivism, the danger and safety to other persons. And this was a case in which this individual, Mr. Rucker, was sentenced, and eight days later, violently attacked the cooperating witness in the holding cell. And because of that attack, he was subsequently found to be a career offender, and that's why he received such a heavy sentence on the second offense versus the drug trafficking offense. But in considering the 3553A factors, the District Court is allowed to consider just one factor, but in this case, it considered more. Okay. Unless the Court has any further questions, I respectfully request that the Court affirm the District Court's decision to deny the defendant's amended motion for compassionate release. All right, thank you. Anything further, Mr. Richards? Yes, I just have a couple points. One, it was said that the District Court valued the medical evidence over what Mr. Rucker said. But in fact, the District Court never even mentioned Mr. Rucker's declaration that he did have symptoms. So there's no evidence there's any consideration, there's any weighing. Again, it's a very cursory opinion. Now, as to the point that the District Court could rely on the nature of the offense, I mean, if you look at the cases, there are very few cases, child pornography was maybe an exception, in which the nature of the offense by itself led to a finding of recidivism. Here, Mr. Rucker provided substantial evidence of rehabilitation in prison, including letters, including programs, including every conceivable method of showing that the factors militated in favor of release and not against release. I'll let you know a piece of historical information. I represented Mr. Rucker on the first drug offense. I didn't represent him on the second offense, because a different attorney was hired, and I was dismayed at that offense, obviously. But it was one event, it happened very long ago, a single instance, and he should not be doing 240 months for that under these conditions. All right, well, thank you very much, then. Thanks to both counsel. The Court will take this case under advisement, and we will be in recess.